■ On Motion to Dismiss.
The opinion of the court was delivered by
Fenner, J.
The motion has no merit. The case is precisely the same case which was before us under a former appeal, in which the present mover was then appellant. We then entertained jurisdiction, and.we still have it. A party can not invoke our jurisdiction to reverse a judgment rendered against Mm, and then decline it when invoked to review a judgment in the same case rendered in his favor.
On the Merits.
This case involves a dispute between the surviving husband and the heirs of the wife as to the ownership of a piece of real estate purchased by the wife by authentic act, to which the husband was a party, and which declares that the purchase was made by the wife “ with her own separate and paraphernal funds for herself, her heirs and assigns.”
The case was before us on a former appeal on a ruling of the judge a quo, which excluded all testimony offered by the husband to show that the act of purchase was executed in error; that it did not recite the desire and intention of the parties, which were simply that the purchase should be made in the name of the wife for the benefit of the community; that the contrary declaration in the act was made through an error of the notary, and was not observed by himself and wife, because they did not understand the meaning of the words used.
*243 We reversed this ruling and remanded the case, saying:
. “ However true it may be that a husband, under whose authority a wife acquires property with the recital in the act that the purchase is made by her with her separate and paraphernal funds and for her exclusive benefit and that of her heirs and assigns, may be estopped from contesting the verity of the statement and the character of the investment, it does not follow that he must necessarily be shut out from all right to attack the act on grounds which he might have urged against others than his wife, such as error, violence or fraud.” Succession of Bellande, 41 An. 493.
The judge a quo in his opinion now before us for review seems to have misconstrued our opinion as meaning that proof of the falsity of the recital in the act was, in itself, sufficient proof of error. He makes no other comment on the evidence in the ease except to say: '“ The proof is convincing, overwhelming, that the wife is not separate in property from her husband, had no separate funds, and that the property, although in the name of the wife, was purchased with uommunity funds and is community property. ” ■
It is perfectly clear that before such proof as that above indicated could be considered or even received, it was first necessary for the husband to establish that the recital to the contrary in the authentic act was inserted and approved through error; for however false be that recital, if it was embodied in the act with the consent of the parties, they are absolutely estopped from contradicting its verity. Maguire vs. Maguire, 40 An. 579; Kerwin vs. Ins. Co., 35 An. 33.
We remanded the case solely for the purpose of receiving evidence on the charge of error, holding, at the same time, that the husband “must be held to establish it by strong, legal and convincing evidence.” Some attempt was made to establish the charge of error, but what does it amount to? The proof shows that the husband and wife jointly conducted the negotiation for the purchase and agreed with the seller as to the price and terms; that the husband went with the seller to the notary and that the former instructed him to put the property in. the name of the wife; that the notary prepared the act in its present form; that the husband and wife went together to the notary’s office to execute the act; that the act was either read to them or that the notary stated the substance of it in such words as these, “this is an act in which Drury Harris sells to Mrs. Bellande, purchasing with her separate paraphernal funds, the following prop *244 erty,” etc., and that the parties then signed the act. The notary is. positive that, if he did not read the act, he stated to the parties the substance of it, and specially that the sale was to the wife, purchasing with “ her separate paraphernal funds.”
The husband says: “I told Mr. Hero simply to put it in my wife’s, name, thinking that it was community property; it did not make any difference in whose name it was, hers or mine.” He does not deny that the act was read to him or that its substance as above given was. stated to him, but says he did not understand the meaning of the words, “separate paraphernal funds.” It strikes one as strange that a person who understood so well what was community property and that property purchased during marriage in the name of either-spouse fell into the community, should have been ignorant of the meaning of the terms, “separate paraphernal funds.” Admitting-that the term “ paraphernal ” might be enigmatical to the lay mind, the statement that the purchase was with .the wife’s “separate” funds would seem plain enough to any ordinary mind.
Not the slightest suggestion is made of any reason why the title-should have been taken in the name of the wife, if it was intended to give it the character of an ordinary community purchase. The husband, the head and master of the community, was present actively participating in the negotiation, arid if a community purchase was intended the natural and ordinary course would have been to take the title in his name. The taking of such a title in the name -of the wife, under such circumstances, is certainly unusual, and, in absence of explanation, improbable — so unusual that, when instructed to put the title in the name of the wife, the notary naturally and spontaneously inferred that it was a purchase for her separate interest, and prepared the act accordingly.
We have no proof, except the bare statement of the husband, as to what the wife’s intentions were, and none at all that she did not understand the full meaning of the act which she signed.
The after circumstances relied on, that the husband paid the taxes on the property, attended to its repair and made improvements thereon at the charge of the community, have little, if any, significance. Such dealings bjr the husband with regard to the separate property of the wife are so natural and . common that -they have no weight upon the question of title,.and confer only a right to reimbursement out of the wife’s separate estate.
*245 We have before us a perfectly clear and unambiguous contract. In a recent case we held (quoting from the syllabus) : . “ When parties reduce their contracts to writing, and when the terms of the •contract exhibit no uncertainty or ambiguity as to the nature, the ■object and the extent of the agreement, it is presumed the writing ■expresses the true and complete undertaking of the parties. Equity may reform and correct even contracts unambiguous on their face, ■on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to support such relief there must be clear proof of the antecedent contract and of the error of committing it to writing.” Ker vs. Evershed, 41 An. 15.
The evidence in this case furnishes no such clear proof.
The rule laid down by us that “a husband who has been a party to an act of purchase, in which it is declared that the price belonged to the wife in her paraphernal right and that the property is to be such, can not afterward contradict it” (Maguire vs. Maguire, 40 An. 580) is founded on considerations of public policy and the security of titles. It would be robbed of efficacy if, after the death of the wife, he could open the door for such contradiction by simply saying that he did not understand the meaning of the words used in the contract.
It is therefore ordered and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now adjudged and decreed that the opposition of P. M. Gleich to the final account be and is hereby maintained, and that the administrator be ordered to account for the property known as No. 94 Fourth street and the revenues thereof as the separate property of the deceased, and to amend his account accordingly, without prejudice, however, .to any lawful claims which the community may have against said separate estate, appellee to pay costs in both courts.